# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

LORRAINE BLUMBERG, Administratrix of the Estate of Richard Blumberg, and individually, and in her own right,
        Plaintiff,

v.

WILLIAM J. ROLLE, JR., FRM JR. TRUCKING INC., UNITED STATES POSTAL SERVICE,
        Defendants.

1:18-cv-09043-NLH-AMD

**OPINION**

**APPEARANCES**:

KENNETH F. FULGINITI
SARAH FILIPPI DOOLEY
DUFFY PARTNERS
1650 MARKET STREET
55TH FLOOR
PHILADELPHIA, PA 19103

   *On behalf of Plaintiff*

MARC R. JONES
CIPRIANI & WERNER PC
155 GATHIER DRIVE
SUITE B
MOUNT LAUREL, NJ 08054

   *On behalf of Defendant William J. Rolle, Jr. and FRM Jr. Trucking, Inc.*

JOHN TUDOR STINSON, JR.
OFFICE OF THE U.S. ATTORNEY
DISTRICT OF NEW JERSEY
402 EAST STATE STREET
ROOM 430
TRENTON, NJ 08608

   *On behalf of Defendant United States Postal Service*

**HILLMAN, District Judge**

This matter concerns claims by Plaintiff arising out of a collision involving a car occupied by Plaintiff and her husband and a tractor trailer transporting mail for the United States Postal Service. USPS has moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction. For the reasons expressed below, USPS's motion will be denied.

**BACKGROUND**

According to Plaintiff's complaint, on July 6, 2017, Plaintiff, Lorraine Blumberg, and her husband, Richard Blumberg, were driving through an intersection in Marlton, New Jersey when Defendant, William Rolle, Jr., who was driving a tractor trailer containing USPS mail, ran a red light and struck the Blumbergs' car. Both Plaintiff and her husband sustained serious injuries. Richard Blumberg died from his injuries two months later.

Plaintiff, on her behalf and on behalf of her husband's estate, has brought a four-count complaint for negligence, negligent infliction of emotional distress, wrongful death, and a survival action, against Rolle, the trucking company he worked for, Defendant FRM Jr. Trucking, Inc., and USPS. Rolle and FRM have filed cross-claims for contribution and indemnification against USPS.[1]

---

[1] On March 28, 2019, Plaintiff filed a motion to deposit Rolle and FRM's insurance policy limits in the amount of $750,000 in

2

Because an agency of the United States is a Defendant,[2] Plaintiff brought her claims in this Court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401, 2671-80.[3] Plaintiff claims that Rolle "acted as an agent, workman, employee and/or servant" of USPS at the time of the accident, and that USPS had a duty to properly hire and supervise "employees and drivers" involved in this matter.

---

the court registry pursuant to L. Civ. R. 67.1. (Docket No. 35.) The return date for the motion is May 6, 2019.

[2] In an action brought pursuant to the FTCA against the USPS and the United States, the United States is the proper defendant. Continental Ins. Co. of N.J. v. U.S., 335 F. Supp. 2d 532, 535 (D.N.J. 2004). In its motion to dismiss, USPS notes that the United States is the proper defendant. (Docket No. 20-1 at 4.) It therefore appears to the Court that the United States should be substituted for USPS. See, e.g., Sconiers v. United States Postal Service, 2017 WL 4790388, at *2 (D.N.J. 2017) (explaining that "a lawsuit for personal injury arising from a federal employee's tortious conduct, the United States is substituted as the only proper Federal Defendant in place of both the USPS and its employee, citing 28 U.S.C §§ 2679(d)(2), 1346(b)(1); 39 U.S.C. § 409(c) (stating FTCA applies to tort actions arising from Postal Service activities)); Drive New Jersey Ins. Co. v. Nebolsky, 2014 WL 7409906, at *1 (D.N.J. 2014) ("The United States Postal Service ('USPS'), an agency of the United States, was named as a defendant. In its moving brief, the United States requested to be substituted for the USPS.").

[3] The Federal Tort Claims Act vests exclusive jurisdiction in district courts for claims against the United States "'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act occurred.'" Norman v. U.S., 111 F.3d 356, 357 (3d Cir. 1997) (quoting 28 U.S.C. § 1346(b)).

Plaintiff seeks to hold USPS liable for the alleged negligence of Rolle and FRM (*respondeat superior*), and for its own liability for its alleged negligent hiring, training, and supervision of Rolle and FRM, and its alleged failure to timely discharge Rolle and FRM.

USPS has moved to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Civil Procedure Rule 12(b)(1). USPS argues that FRM is an independent contractor engaged by the USPS to transport mail pursuant to a detailed, written contract. Under the terms of such contract, USPS contends that FRM bore all responsibility for its trucks, drivers, and the performance of FRM's duties under the contract. USPS further contends that FRM agreed to bear all liability for harm to persons and property, and to indemnify USPS from any and all tort liability, in connection with FRM's performance under the contract.

USPS therefore argues that under the FTCA and its limited waiver of sovereign immunity, a plaintiff is barred from bringing an action against the United States to recover for damages for the allegedly negligent conduct of an independent contractor or the contractor's employee. USPS further argues that the FTCA does not waive sovereign immunity for claims of negligent hiring, training, supervision, and timely discharge because it is a discretionary function for which it is entitled

to sovereign immunity.

Plaintiff argues that Rolle and FRM are not independent contractors but rather employees of USPS due to USPS's control over their actions. Plaintiff further contends that the discretionary function exception does not apply to her claims against USPS. Plaintiff also argues that USPS's motion is premature because there has been no discovery as to USPS's control and supervision of Rolle and FRM, and the contract between Rolle and FRM, standing alone, does not negate Plaintiff's claims.[4]

## DISCUSSION

**A. Subject matter jurisdiction**

Plaintiff's asserted basis for subject matter jurisdiction over this matter is the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., and 28 U.S.C. § 1367 for Plaintiff's state law claims.[5]

**B. Standard for Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)**

"A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter

---

[4] Rolle and FRM have summarily joined in Plaintiff's opposition to USPS's motion to dismiss. (Docket No. 31.)

[5] Absent jurisdiction under the FTCA, there is no other basis for jurisdiction over Plaintiff's claims against Rolle and FRM because they are all citizens of New Jersey.

5

jurisdiction." Gould Electronics Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). There is "a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Federal Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

On a facial attack, "the court must consider the allegations of the complaint as true," and the court employs the Rule 12(b)(6) standard for assessment. Id.; see also Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (explaining "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party").

"The factual attack, however, differs greatly," because (1) "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims," and (2) "the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen, 549 F.2d at 891.

The distinction between Rules 12(b)(1) and 12(b)(6) is important because the 12(b)(6) standard affords significantly

6

more protections to a nonmovant. Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd., 836 F.3d 261, 268 (3d Cir. 2016). A Rule 12(b)(1) "factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." Id. (citation omitted).

Moreover, the Third Circuit Court of Appeals has made it clear that a factual attack may only occur after the filing of an answer. Long v. Southeastern Pennsylvania Transportation Authority, 903 F.3d 312, 320 (3d Cir. 2018) (explaining that because the defendant "filed the attack before it filed any answer to the Complaint or otherwise presented competing facts," its motion was "by definition, a facial attack"); S.D. by A.D. v. Haddon Heights Board of Education, 722 F. App'x 119, 124 (3d Cir. 2018) (finding that the district erred when considering the defendant's motion to dismiss as a factual attack because it had "neither answered Appellants' Amended Complaint nor offered any factual averments in support of its motion to dismiss"); Mortensen, 549 F.2d at 891 (providing that a Rule 12(b)(1) factual attack "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed" because a "factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted"); id. at 895 n. 22 (further explaining, "As a general rule if there is a jurisdictional defect as well as an

7

insufficiency on the merits, the correct procedure is to treat a dismissal as having been on the jurisdictional ground for the obvious reason that if the court lacks jurisdiction to hear the case then a fortiori it lacks jurisdiction to rule on the merits.").

**C. Analysis**

The procedural posture of USPS's motion and the content of Plaintiff's allegations require the denial of USPS's motion at this time.

As a primary matter, USPS's motion is procedurally improper because it constitutes a factual attack lodged before it has filed its answer. USPS has moved to dismiss Plaintiff's claims, arguing that because Rolle and FRM were independent contractors, and not employees of the United States, USPS cannot be held liable for their alleged negligence.[6] The United States has

---

[6] USPS also argues that Plaintiff's negligent hiring and supervision claim fails because of the discretionary function exception. The FTCA provides a limited waiver of sovereign immunity in certain tort actions against the United States for money damages, but that waiver does not extend to various types of government conduct enumerated in 28 U.S.C. § 2680, including "the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." Bryan v. United States, 913 F.3d 356, 364 (3d Cir. 2019). "Discretionary acts and omissions 'involv[e] an element of judgment or choice.' Conduct is non-discretionary only if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' and the government 'employee has no rightful option but to adhere to the directive.'" Id. (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991) (other citation omitted)). As

8

waived sovereign immunity for some negligence suits for injuries caused by Government employees, 28 U.S.C. § 1346(b), but government employees do not include "any contractor with the United States," 28 U.S.C. § 2671. This is called the "independent-contractor exemption." E.D. v. United States, --- F. App'x ---, 2019 WL 994296, at *2 (3d Cir. 2019) (citing Norman v. United States, 111 F.3d 356, 357 (3d Cir. 1997)). "'A critical element'" in determining whether the independent-contractor exception applies is "'the power of the Federal Government to control the detailed physical performance of the contractor.'" Id. (quoting United States v. Orleans, 425 U.S. 807, 814 (1976)) (other citation omitted). "In other words, 'the question here is . . . whether [the] day-to-day operations are supervised by the Federal Government." Id. (quoting Orleans, 425 U.S. at 815).

Rather than relying solely upon the allegations in Plaintiff's complaint, which, if it had, would classify USPS's motion as a facial attack, USPS points to multiple Transportation & Contract Delivery Services agreements ("Transportation Agreements") entered into between FRM and USPS to support its position that Rolle and FRM are independent

---

discussed below, the Court cannot consider this argument at this stage of the case.

9

contractors for whom it holds no liability.[7] These agreements were not referenced in or attached to Plaintiff's complaint. Therefore, the only way the Transportation Agreements can be considered at this stage is if the Court construes, under the traditional Rule 12(b)(6) standard, Plaintiff's claims to be based on the Transportation Agreements. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (explaining in assessing a Rule 12(b)(6) motion, a court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the

---

[7] USPS also points to other documents not referenced in Plaintiff's complaint, including a declaration of the manager of local distribution transportation and a contracting officer for USPS, who relates that FRM and its drivers were paid via 1099 instead of a W-2 and did not receive any benefits, and he does not consider FRM or Rolle to be an employee of USPS or under USPS control. For the same reasons as the Transportation Agreements, the Court cannot consider this evidence at this time. Indeed, the declaration is self-serving because of Plaintiff's inability to challenge it, and this further demonstrates that the resolution of the independent contractor exception cannot take place in this procedural posture. Cf. Paladino v. Newsome, 885 F.3d 203, 209 (3d Cir. 2018) ("[S]elf-serving affidavits pointing to specific facts can create a genuine issue of material fact sufficient to survive summary judgment."); Arrington v. Colortyme, Inc., 972 F. Supp. 2d 733, 742 (W.D. Pa. 2013) ("[T]he Court finds that this quantum of evidence - a short self-serving affidavit with no supporting documentation - cannot itself sustain a factual attack on the Court's subject-matter jurisdiction.") (citing Washington v. Hovensa LLC, 652 F.3d 340, 346–47 (3d Cir. 2011); De Cavalcante v. C.I.R., 620 F.2d 23, 26–27 (3d Cir. 1980) (when charged with making evidentiary determinations, court may find that self-serving affidavits absent evidentiary support are insufficiently probative)).

10

plaintiff's claims are based on the document"); Hartig Drug Company, 836 F.3d at 268 (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court . . . consider[s] only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

However, Plaintiff's claims are not based on the Transportation Agreements. Even though the Transportation Agreements set forth the parameters of the relationship between Rolle, FRM, and USPS, and it is pursuant to these agreements that Rolle was hauling mail for the USPS on the day of the accident, Plaintiff's claims cannot be construed to be based on a contractual arrangement she is not a party to. It would be one thing if Plaintiff alleged in her complaint that Rolle and FRM breached their obligations to USPS under their Transportation Agreements, but that is not her claim. Plaintiff claims that Rolle and FRM were employees of USPS, and USPS had control over their actions, which resulted in the accident and her damages. The Court must accept those allegations as true at this initial pleading stage, and the Court cannot delve into the interpretation of a contract between the defendants in order to determine whether Plaintiff's claims are factually correct.

Even if, however, the Court construed Plaintiff's complaint

to be based on the contract between the trucking company and USPS, and the Court could therefore consider it as a facial attack under the Rule 12(b)(6) standard, the Transportation Agreements may not be the entire picture in this case. It is true that the Transportation Agreements standing alone suggest that Rolle and FRM could be classified as independent contractors. For example, as provided in USPS's motion:

> To be eligible to enter the Transportation Agreement, suppliers like FRM cannot be employees of the USPS; immediate family members of USPS employees; or business organizations "substantially owned or controlled by Postal Service Employees or their immediate families." Provision 4-2 (p. 9 of 36). Suppliers are responsible for obtaining permits and complying with all applicable laws in connection with performance of the agreement. Clause B-30 (p. 19 of 36). Suppliers are responsible for supervising all operations under the Transportation Agreement, including the conduct of any subcontractors. Clause B-64 (p. 19 of 36). Suppliers are responsible for maintenance and repair of their vehicles. Statement of Work § B(4)(a)(1) (Page B-14). Similarly, suppliers must maintain and inspect their own vehicles as well as establish and maintain sufficient liability insurance at their own cost. Statement of Work §§ B(6), B(7) (Pages B-16 to B-17). Finally, suppliers are responsible for all damage to persons or property arising from performance under the Transportation Agreement. Clause B-30 (p. 19 of 36). Suppliers also agree to indemnify the USPS for all damage to persons or property arising from performance under the Transportation Agreement. Clause B-39 (p. 19 of 36).

(Docket No. 20-1 at 8.)

Plaintiff, however, points to other facts that could suggest otherwise regarding USPS's control over Rolle and FRM. Plaintiff relates:

> In the present case, the requirements and duties of the

12

> "contracting officer" are set forth in the Highway Route
> Contract ("HRC"), accompanying attachments and the
> Transportation and Contract Delivery Service Terms and
> Condition. *See* Highway Route Contract, accompanying
> attachments and the Transportation and Contract Delivery
> Service Terms and Condition. The "contracting officer" is
> defined as "the person executing this contract on behalf of
> the Postal Service". *Id.* at Part 3 - Clauses, Section
> Bl(a). . . . The Postal Service must spot the tractors and
> trailers used on the route by the supplier. *See* Section
> B.2(b) of the HRC. All equipment is to be inspected at a
> time and location indicated by the Postal Service. *See*
> Section B.2(d) of the HRC. All equipment must, at all
> times, be maintained in a condition that reflects favorably
> on the Postal Service and is acceptable to the Postal
> Service. *See* Section B.2(d) of the HRC. The Postal Service
> directs the supplier when to load and unload the mail. *See*
> Section B.3(a) of the HRC. The supplier shall deny access
> to U.S. Mail as directed by the Postal Service. *See*
> Section B.3(h) of the HRC.
>
> The Postal Service has the authority to cancel the
> contract. *See* Section E(8) of the Transportation Contract.
> The Postal Service may inspect the books of any supplier at
> any time. *See* Section B-65(b) of Transportation Contract.
> A supplier is considered to be in "default" of the contract
> if it fails to follow the instructions of the Postal
> Service. *See* Section B-69(c) of the Transportation
> Contract. The supplier cannot hire anyone to act under the
> contract that is contrary to the instructions of the Postal
> Service. *See* Section B- 69(k) of the Transportation
> Contract. The Postal Service is able to terminate the
> contract if it is in "the best interest of the Postal
> Service". Section B-69(p) of the Transportation Contract.
> The Postal Service has the authority to extend the
> contract. *See* Clause 2-19. The Postal Service may
> terminate any and all of the supplier's contracts for
> default based on a proposed safety rating or determination
> of a rating of "unsatisfactory" of the supplier (as
> described in 49 CPR § 385.11) by the Federal Motor Carrier
> Safety Administration. *See* Page 36 of 36 of the
> Transportation Contract. The supplier must obtain approval
> from Postal Service before subcontracting any work awarded
> under this contract. *Id.*

(Docket No. 29 at 16-18.)

Moreover, Plaintiff argues that it was while Rolle was hauling U.S. Mail that he caused the accident with the Blumbergs, and it is understood that Rolle had to be approved by USPS before he was able to haul U.S. Mail, USPS instructed when and where the loads were to be picked up, and where the loads had to be delivered and to whom. (Id. at 18.)

The foregoing demonstrates why USPS's subject matter jurisdiction challenge – under either the facial or factual standard – is not proper at this time. It could be, as other courts have determined when considering similar agreements, that Rolle and USPS were indeed independent contractors for which USPS has no liability.[8] But it is too early in the action to

---

[8] As cited by USPS, courts in various districts have reached the conclusion that similar agreements between trucking companies and USPS do not cause the truck driver and driver to be employees of USPS. Courts have also determined that the decision to enter into such agreements with a trucking company are discretionary functions for which sovereign immunity has not been waived. Plaintiff has cited to several cases which rejected the independent contractor exception defense. However, many of these decisions were reached at the summary judgment stage, or at least after some limited discovery had been taken. See, e.g., Jones v. U.S., 2013 WL 2477288, at *3 (S.D. Ind. 2013) (determining that the truck driver hauling USPS mail that killed another driver was an independent contractor, but construing USPS's motion as one for summary judgment because USPS submitted materials outside the pleadings and both parties addressed the summary judgment standard in their briefing); Estate of Anderson-Coughlin v. United States, 2017 WL 6624020, at *2 (D. Conn. 2017) (determining that the truck driver hauling USPS mail that killed another driver was an independent contractor, but making that determination after a hearing on the motion and allowing plaintiff to conduct limited jurisdictional discovery); Bryan v. United States, 913 F.3d 356, 358 (3d Cir.

determine definitively that USPS had no hand in the operations of the Defendant trucking company and the conduct of its driver in this case.⁹

The Third Circuit has instructed that "where jurisdiction is intertwined with the merits of an FTCA claim, . . . a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion." E.D., 2019 WL 994296, at *3 (quoting CNA v. U.S., 535 F.3d 132, 144 (3d Cir. 2008) (citing Gould Elecs. Inc. v. United States, 220 F.3d 169, 178–79 (3d Cir. 2000)). The Court finds that guidance applicable here.

Consequently, the Court will deny USPS's motion without prejudice, and because the status of Rolle and FRM relative to the USPS is intertwined with the circumstances of the accident, the Court directs that the case shall proceed through the usual discovery process.¹⁰

---

2019) (affirming district court's grant of summary judgment to the U.S. because it was shielded from liability under the FTCA's discretionary function exception); E.D. v. United States, 2019 WL 994296, at *3 (3d Cir. 2019) (finding that the district erred in determining the discretionary function exception at the motion to dismiss stage). Whether the independent contractor and discretionary function exceptions apply must therefore be determined at a later stage in the case.

⁹ The Court also cannot determine at this time whether the discretionary function exception applies to USPS.

¹⁰ While keeping in mind the Court's reasoning for denying USPS's motion to dismiss, USPS may nonetheless raise the issue of subject matter jurisdiction at any appropriate time during the discovery process, and the Court will then be permitted to fully

An appropriate Order will be entered.


Date  April 9, 2019                    s/ Noel L. Hillman
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.

---

consider evidence outside of the pleadings presented by all parties.  See Kontrick v. Ryan, 540 U.S. 443, 455 (2004) ("A litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action, even initially at the highest appellate instance."); Group Against Smog and Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 122 (3d Cir. 2016) (citations omitted) ("[A]n objection to subject matter jurisdiction may be raised at any time, a court may raise jurisdictional issues *sua sponte*, and a court may consider evidence beyond the pleadings such as testimony and depositions when considering a jurisdictional challenge.").